**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RANDOLPH JONES,**

                                                            **Plaintiff,**

          **v.**                                                            **5:14-cv-1014**

**INTERNATIONAL UNION OF OPERATING
ENGINEERS, AFL-CIO LOCAL 158, 158c, 158s,
and 158 RA, as Aider and Abettor; DANIEL
MCGRAW, Business Manager, as Aider and Abettor;
RICHARD A. ROSS, President, as Aider and
Abettor; JEREMY MILLSON, Union Steward, as
Aider and Abettor; and THOMAS SCHWEIZER,
Business Representative, as Aider and Abettor,**

                                                            **Defendants.**
_____

Thomas J. McAvoy, Senior District Judge.

### DECISION & ORDER

Defendants move for summary judgment in this case involving claims that the

Defendant union violated Plaintiff's rights under state and federal labor laws and

discriminated against him on the basis of his race. The parties have briefed the issues

and the Court has determined to resolve the issue on the submissions.

**I.     BACKGROUND**

This case concerns Plaintiff's complaints of discrimination by the Defendants, the

union that represented him and agents of that union. Plaintiff alleges Defendants

refused to secure him training as a plant operator for which he was claims he was

eligible under the collective bargaining agreement between his union and employer.

The plant in question was the Ley Creek plant operated by the Onondaga County

Resource Recovery Agency ("OCRRA"). Obtaining such training would have allowed

him eventually to attain that position as plant operator.  Plaintiff alleges that Defendants'

actions violated the provisions of the collective bargaining agreement.  Plaintiff seeks

relief under the National Labor Relations Act and the Equal Pay Act.  He also alleges

racial discrimination and retaliation in violation of Federal law and similar claims under

New York law.

Plaintiff began working for OCRRA in April 1987.[1]  OCRRA is a public benefit

---

[1]Local Rule 7.1(a)(3) requires that a party who moves for summary judgment file a "Statement of Material Facts" that "set[s] forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established."  L.R. 7.1(a)(3).  The opposing party is then required to file a response, "admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises."  Id.  The Rules are clear that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  Id. (emphasis in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply Rule 7.1(a)(3) strictly.  See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations.");  Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts);  Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth no citations – specific or otherwise – to the record")(emphasis in original);  McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted");  Osier v. Broome County, 47  F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

Plaintiff responded to the Defendants' statement of material facts, at times citing to the record for the facts over which the parties have a dispute.  Plaintiff ignored the rule that requires a response to the "corresponding numbered paragraphs," however, and instead submitted a statement with numbered paragraphs of the Plaintiff's device.

corporation created under the laws of the State of New York. Defendants' Statement of

Material Facts, dkt. # 29-10 ("Defendants' Statement") at ¶ 5. OCRRA is charged with

operating solid waste and resource recovery facilities. Id. at ¶ 5. OCRRA operates two

transfer stations, Ley Creek and Rock Cut Road. Id. ¶ 6. Id. at ¶ 2. He served as a

tractor-trailer driver from 1987 until 2010. Id. at ¶ 3. Since 2010, Plaintiff has held the

job title of Motor Equipment Operator III. Id. at ¶ 4. Plaintiff is an African American. Id.

at ¶ 1.

Defendant Local 158 of the International Union of Operating Engineers, AFL-CIO

("Local 158"), is a recognized employee organization and the exclusive bargaining

agent for employees of OCRRA who occupy the job titles of MEO III, Ley Creek Solid

Waste Plant Operator and certain other non-management positions. Id. at ¶ 7.

At all relevant times, Defendant Daniel McGraw was the Business Manager of

Defendant Local 158. Id. at ¶ 10. Defendant Richard A. Ross was the President of

Local 158 and District Manager of District 852 of Local 158. Id. at ¶ 11. Defendant

---

See dkt. # 32-17. The first numbered paragraph, for instance, admits to paragraphs 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 15, 35, 41, 43, 44, 45, 47, 51, 60, 61, 62 and 64. Id. at ¶ 1. The second paragraph of the statement then lists the paragraphs of the Defendants' statement with which the Plaintiff has a disagreement. Id. at ¶ 2. The remaining paragraphs address individually the paragraphs over which the Plaintiff claims a dispute of material fact exists.

The Court is able to use the Plaintiff's statement to assess the facts at issue in the case. The Plaintiff is proceeding pro se, and the Court will read his pleadings liberally. As such, the Court will cite to the Defendants' statement for facts about which the parties have no dispute. Where a dispute exists, the Court will note that. By failing to follow the format outlined in the Court's rules, however, the Plaintiff has undermined the purpose of the Court's rules on these statements. The rules are supposed to provide an efficient means of comparing the facts at issue by providing matching numbered paragraphs that point toward areas in the record where a dispute of fact exists. Failing to follow this rule makes the Court's task in evaluating the motion more time-consuming and less straightforward.

Thomas Schweizer was a Business Agent for Local 158. Id. at ¶ 12. Defendant

Jeremy Millson was an OCRRA employee and a shop steward for Local 158 at the Ley

Creek transfer station. Id. at ¶ 13.

Local 158 and OCRRA are parties to a collective bargaining agreement ("CBA")

that establishes terms and conditions of employment for those employees represented

by Local 158. Id. at ¶ 15. Defendants claim that Millson, as shop steward, did not have

the authority to file or process a contract grievance on behalf of the Plaintiff. Id. at ¶ 14.

Plaintiff disputes this claim, contending that the CBA provides that Millson is to sign

such grievances. Plaintiff's Response to Defendants' Statement of Material Facts

("Plaintiff's Response"), dkt. # 32-17, at ¶ 3.

The parties disagree about whether OCRRA and Local 158 properly entered into

a "Side Letter Agreement" concerning training, and whether this alleged agreement

altered the CBA. Defendants' Statement at ¶¶ 16-17; Plaintiff's Response at ¶ 4.

Defendants contend that this "Side Letter Agreement" set up a "joint committee for the

purpose of exploring mutually agreeable ways to increase training opportunities for

members of the bargaining unit[.]" Defendants' Statement at ¶ 17. After executing this

alleged Side Letter Agreement, the members of the training committee met to discuss

ways to increase training opportunities.[2] Id. at ¶ 18. In late June 2012, Defendant Tom

Schweizer received an invitation from OCRRA's Executive Director, Mark Donnelly, to

attend a meeting of the Joint Training Committee to be held on June 29, 2012. Id. at ¶

---

[2]Plaintiff purports to dispute the statements in paragraphs 16-23 of the
Defendants' statement, but does not point to any evidence of record to dispute the
statements made in paragraphs 18-23. The Court will therefore accept them as true.

19.  The meeting's purpose was further discussion of the training program.  <u>Id.</u>  The invitation discussed an order of training previously agreed upon by the Joint Training Committee.  <u>Id.</u>  The Committee agreed that in selecting workers for training "[s]eniority will play the main role—BUT NOT *always*."  <u>Id.</u> (emphasis in original).  "Availability of equipment, work demands, skill of person involved, absenteeism, OT costs, etc. will also be decision criteria."  <u>Id.</u>  Local 158 was to be made aware of that decision.  <u>Id.</u>  The agreement emphasized that selectors would "[c]onsider those most likely and SENIOR to be entitled or asked to move into a higher slot when needed and they should be trained earlier."  <u>Id.</u> (emphasis in original).  Because the agreement contemplated "much training[,]" the parties also agreed that "the positions and/or equipment chosen for training will first be decided based on Management requirements for maximum flexibility."  <u>Id.</u>

The Training Committee met on June 29, 2012.  <u>Id.</u> at ¶ 20.  They "discuss[ed] training opportunities and confirmed their agreement that seniority would play the main role in determining the order in which training opportunities were offered to members of the bargaining unit."  <u>Id.</u>  The terms of this agreement were reduced to writing and a draft document was circulated among the members of the Joint Training Committee.  <u>Id.</u> at ¶ 21.  Paragraph (D) of that document provided that "[d]ecisions on" the "*order* of Training" would be "NOT *always*" be determined by seniority.  <u>Id.</u> (emphasis in original).  Others factors considered included "[a]vailability of equipment, work demands, skill of person involved, absenteeism, OT costs, etc."  <u>Id.</u>  The amount of training likely performed, the positions and equipment chosen for training would depend on the needs of management for "maximum flexibility."  <u>Id.</u>

5

Members of the Joint Training Committee prepared and circulated a second joint training document in early July 2012.  Id. at ¶ 22.  This document also discussed the order of training, emphasizing the importance of seniority, but emphasizing that seniority was not the only factor to be considered.  Id.  Management agreed to "first consider those SENIOR with sufficient knowledge to be entitled or asked to move inot [sic] a higher slot when needed and they should be trained first."  Id.  (emphasis in original).  Management's decision to disregard seniority was an "irrefutable" decision, but management was required to "disclose the reason to the employee and steward at interest."  Id.  The agreement required management to "disclose the reason" for disregarding seniority "to the employee and steward at interest."  Id.  Again, the parties agreed that the amount of training contemplated required "maximum flexibility" for management.  Id.

Finally, on September 28, 2012, Local 158 and OCRRA "executed and entered into a Side Letter Agreement."  Id. at ¶ 23.  The Side Letter "detailed the manner in which the training program would be implemented."  Id.  As with the draft proposals, the Side Letter Agreement emphasized that seniority would not always determine the order of training.  Id.  Management agreed to consider those with seniority and "sufficient knowledge to be entitled or asked to move into a higher slot when needed[.]" Id.  Those employees would "be trained first."  Id.  Though management's decision on training order was "irrefutable," management also agreed to disclose the reason for that decision to the "employee and steward at interest."  Id.

Defendants contend that seniority is defined by Article 17 of the CBA.  Id. at ¶ 24.  That Article provides that "[s]eniority shall start from the last date of hiring.  Agency-

wide seniority will apply to layoff, rehire and bidding on jobs posted by the Agency when the Agency assigns or reassigns employees to fill a scheduled vacancy of more than two (2) consecutive weeks." Id. Plaintiff disputes that this Article applies to the events at issue in this case. Plaintiff's Response at ¶ 5. Plaintiff contends that the proper Article for consideration is Article 20.2b of the CBA, which provides that "[w]henever such temporary openings or vacancies occur, OCRRA may fill these positions by assignment or reassignment of such assignments or reassignments shall be made on seniority and qualifications." Id. Plaintiff contends that the Side Letter described above was "illegal and unlawful" and "not part of the contract." Id. He does not offer any explanation for why the Union and OCRRA could not negotiate such an agreement, but simply offers a legal conclusion that the agreement was improper.

Ronald Boardway was an OCRRA employee and a member of the bargaining union represented by Local 158. Defendants' Statement at ¶ 25. On or about August 7, 2012, Defendant Tom Schweizer, a union business representative, was informed that the permanent Ley Creek plant operator would be absent from work on August 10, 2012. Id. at ¶ 26. OCRRA intended to assign a non-bargaining unit employee as a temporary replacement for the operator. Id. OCRRA made the temporary assignment on August 10, 2012, the fact of which Scheizer was made aware. Id. at ¶ 27. Schweizer contacted OCRRA Director Mark Donnelly to object to the assignment of a non-bargaining unit employee to perform bargaining-unit work. Id. Donnelly suggested that the union and OCRAA should implement the training program that the Joint Training Committee had generally agreed to. Id. Defendants contend that the agreement concerning the training program relied on the selection of persons for

7

training based largely on seniority.  Id.  Since Donnelly advised Schweizer that Boardway was the most senior bargaining unit member, Donnelly contended that Boardway should be offered the opportunity to train as plant operator that day.  Id. Plaintiff contends that Schweizer met with Joseph Fontanella, the OCRRA Transfer Director, on August 20, 2012 to discuss who should be permitted to train for the Plant Operator position.  Plaintiff's Response at ¶ 6.

Boardway filed a complaint with OCRRA on August 13, 2012, claiming that Plaintiff had pushed him and attempted to intimidate him into changing his mind about accepting OCRRA's offer of plant operator training.  Defendants' Statement at ¶ 28. OCRRA conducted an investigation and found that Plaintiff had created an environment which could have made Boardway feel uncomfortable about participating in the training. Id.

Defendants point out that OCRRA selected Boardway to receive training in the position of plant operator at the Ley Creek transfer station.  Id. at ¶ 30.  OCRRA employees Joseph Fontanella and Joseph Broome made the decision as to which employee possessed sufficient knowledge to be eligible for the training.  Id. at ¶ 31. Fontanella and Broome did not rely on the civil service description of the job because the job required supervisory skills possessed only by the permanent plant operator.  Id. By May 8, 2013, Boardway had received between forty and sixty hours of training for that position.  Id. at ¶ 32.  Most of this training included mentoring.  Id.  Plaintiff does not possess the qualifications necessary for a permanent competitive appointment to the plant operator position.  Id. at ¶ 33.

On May 10, 2013, Plaintiff requested Local 158 to file and process a contract

grievance concerning the selection of Boardway to receive this training. Id. at ¶ 34.
The Local initially declined to file or process that grievance. Id. at ¶ 35. Eventually,
however, Local 158 obtained an extension of time to file a grievance. Id. In light of the
terms of the Training Side Letter, Local 158 did not believe the May 10 grievance had
any merit. Id. at ¶ 36. Still, on June 18, 2013, Local 158 re-dated and filed the
grievance. Id. The Local processed the grievance to the third step of the procedure,
ensuring that OCRRA would be required to "articulate the basis for its selection of
Ronald Boardway instead of Plaintiff for training." Id. OCRRA responded to the
grievance, claiming that it had filled the training requirements of the CBA. Id. at ¶ 37.
The response noted that Boardway had more seniority than the Plaintiff, and that he
had more than fifty hours of plant operator training under the side letter. Id. Boardway
had, through both this training and his experience, demonstrated competence in
operating the facility. Id. Thus, OCRRA concluded, Boardway was both senior to the
Plaintiff and more qualified than him. Id. OCRRA also explained that the decision
select Boardway clearly grew out of Article 20.2.B of the CBA, as Boardway had more
seniority than the Plaintiff and was qualified. Id. at ¶ 38. Plaintiff disputes that
Boardway was qualified for the position. Plaintiff's Response at ¶ 9.

Boardway again received training for the Ley Creek plant operator position on
July 12, 2013, and Plaintiff again sought to file a grievance through Local 158.
Defendants' Statement at ¶ 39. After soliciting a legal opinion that determined that
such a grievance had no reasonable chance of succeeding, the Local decided not to file
the grievance. Id. Plaintiff disputes these facts, alleging that the Side Letter Agreement
was not part of the CBA and could not be used to deny his grievance. Plaintiff's

9

Response at ¶ 10.  The Local again denied Plaintiff's December 16, 2013 request to file

a grievance after OCRRA selected Boardway for training in the plant operator position

on December 13, 2013.  Id. at ¶¶ 42-44.

Plaintiff filed an improper practice charge with the New York State Public

Employment Relations Board ("PERB") on June 28, 2013.  Defendants' Statement at ¶

41.  He alleged that Local 158 breached its duty of fair representation by not filing the

grievance on May 10, 2013 and not properly processing the June 18, 2013 grievance.

Id.  Plaintiff filed a similar charge regarding the December 16, 2013 request to file a

grievance on January 7, 2014.  Id. at ¶ 45.  After an evidentiary hearing, both improper

practice charges filed by the Plaintiff were dismissed on the merits.  Id. at ¶ 46.  Plaintiff

contends that the Administrative Law Judge erred in dismissing the charges by relying

on the "illegal and unlawful side letter[.]"  Plaintiff's Response at ¶ 11.

Plaintiff filed a complaint with the New York State Division of Human Rights

("DHR").  Defendants' Statement at ¶ 47.  Plaintiff alleged that Defendants allowed

"'training standards to be lowered for the Caucasian employee in September 2012'" and

permitted "'the non-qualified Caucasian employee to work in the capacity as Plant

Operator, while knowing he lacked the civil service standards, as required.'"  Id.

Jeremy Millson filed a complaint with OCRRA on May 8, 2014.  Id. at ¶ 48.  The

complaint alleged that Plaintiff had harassed and intimidated Millson on May 7, 2014.

Id.  OCRRA investigated the complaint and concluded that Plaintiff had negaged in

harassing and intimidating behavior toward Jeremy Millson.  Id. at ¶ 49.  OCRRA issued

a written reprimand.  Id.  Millson did not file his complaint against Plaintiff in retaliation

for Plaintiff engaging in protective activities.[3]  Id. at ¶ 50.

On May 7, 2014, the Ley Creek transfer station plant operator position was vacant for four hours.  Id. at ¶ 52.  The vacancy occurred because Ronald Boardway was receiving training for the permanent plant operator position.  Id.  On May 8, 2014, a request was made of OCRRA for Plaintiff to be paid at the plant operator rate for the four hours when the plant operator was absent from Ley Creek on May 7, 2014.  Id. at ¶ 53.  OCRRA denied this request on or about May 13, 2014.  Id. at ¶ 54.  Plaintiff filed a proposed Grievance Form on May 21, 2014, seeking to have Local 158 file a contract grievance regarding OCRRA's failure to pay Plaintiff the plant operator rate on May 7, 2014.  Id. at ¶ 55.  The Local investigated the proposed grievance and sought a legal opinion.  Id. at ¶¶ 56-57.  An attorney determined that the grievance did not have a reasonable likelihood of succeeding, and Local 158 declined to process the proposed grievance.  Id. at ¶¶ 58-59.  Plaintiff contends that Local 158's refusal to process the grievance was the result of the "illegal and unlawful side letter[.]"  Plaintiff's Response at ¶ 13.  Plaintiff did not file a complaint with the PERB or New York State Division of Human Rights ("DHR") based on Local 158's refusal to file a grievance.  Defendants' Statement at ¶ 60.  Plaintiff did file a complaint with the DHR on July 11, 2014 regarding OCRRA's selection of Ronald Boardway for Ley Creek plant operator training on June 5, 2014 and for issuing a written reprimand following OCRRA's investigation of

---

[3]Plaintiff "disputes" this statement, but does not offer any record evidence to dispute the affidavit of Millson on which the statement is based.  Instead, Plaintiff's denial of that particular statement again reiterates his claim that the side letter agreement was invalid.  Since Plaintiff offers no evidence of record to dispute the statement, the Court will accept that fact as true.

Millson's complaiont.  Id. at ¶ 61.  DHR issued a written determination and order finding no probable cause.  Id.

Plaintiff filed an action against OCRRA in this Court on November 15, 2013, captioned as Jones v. OCRRA, et al., 5:13cv1425.  Id. at ¶ 64.  Plaintiff alleged that OCRRA discriminated against him on the basis of race by selecting Ronald Boardway for training in the Ley Creek plant operator position on August 10, 2012.  Id.  Magistrate Judge David E. Peebles granted the OCRRA's motion for summary judgment and dismissed all of Plaintiff's claims on April 1, 2015.  Id. at ¶ 65.  Magistrate Judge Peebles found that no reasonable finder of fact could conclude that "'the collaborative decision between OCRRA and the union that led to the offering of training to Ron Boardway was motivated by plaintiff's race.'"  Id.

Plaintiff filed the instant Complaint on August 14, 2014.  See dkt. # 1.  The Complaint raises eight counts under various Federal and New York laws.  Count One alleges that Defendants violated the National Labor Relations Act by failing to adhere to the terms of the CBA between OCRRA and the Union.  Count Two alleges a conspiracy to violate the Equal Pay Act through the Side Letter, which Plaintiff contends was illegal. Count Three alleges employment discrimination and conspiracy to discriminate because of the Plaintiff's race.  Plaintiff alleges that Defendants unlawfully failed to promote him.  Count Four alleges unlawful discrimination by the Defendants in failing to offer Plaintiff training because of his race.  Count Five alleges retaliation by the Defendants in failing to process his grievances.  Count Six alleges a violation of New York Executive Law § 297(9).  Count Seven alleges Defendants violated New York's Taylor Law by discriminating against him on the basis of his race and "aiding and

abetting" OCRRA's discrimination against him on the basis of his race.

After answering the Complaint, engaging in discovery, and participating in a mandatory mediation, the Defendants filed the instant motion for summary judgment. See dkt. # 29. Plaintiff responded to the motion, and the Court determined to consider the motion on the pleadings without oral argument.

## II. LEGAL STANDARD

Defendants have moved for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A

party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998).

## III.  ANALYSIS

Defendants seek summary judgment on each of the Plaintiff's claims.  The Court will address each in turn.

### A.  Labor Management Relations Act

Defendants first argue that Plaintiff's claims against them under the Labor Management Relations Act ("LMRA") must be dismissed because the Defendant Union's agreement with OCRRA, a public entity, does not implicate the provisions of the Act.  Plaintiff contends that the Defendants, in entering into an "illegal side letter" and refusing to process his grievances, violated the LMRA and are liable to suit.

"The federal labor laws seek to promote industrial peace and the improvement of wages and working conditions by fostering a system of employee organization and collective bargaining." <u>Vaca v. Sipes</u>, 386 U.S. 171, 182 (1967).  The LMRA "contemplates a primarily economic relationship between employer and employee, and provides a mechanism for resolving economic disputes that arise in that relationship." <u>Brevard Achievement Center, Inc.</u>, 342 N.L.R.B. 982, 984-85 (2004).   The question here is whether the Act applies to this case, since the employer in question is a political subdivision of the State of New York.  The Act defines an "employer" as "any person acting as an agent of an employer, directly or indirectly, but shall not include . . . any

State or political subdivision thereof . . . or any labor organization . . . or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 152(2).

Courts in the Second Circuit have concluded that a district court lacks jurisdiction to hear LMRA claims involving a "political subdivision" of a state that allege "the employer violated the collective bargaining agreement between it and the Union." Smith v. United Federation of Teachers, 162 F.3d 1148 (2d Cir. 1998). That standard applies even when, as in Smith, the claim is against the union rather than the employer, since when "there is no federal jurisdiction over the employer, there is no jurisdiction over the companion claim of breach of the duty of fair representation." Id. (citing Manfredi v. Hazleton City Auth., 793 F.2d 101 (3d Cir. 1986); Ayres v. International Bhd. of Elec. Workers, 666 F.2d 441, 443-44 (9th Cir. 1982); Crilly v. Southeastern Pennsylvania Transp. Auth., 529 F.2d 1355, 1357 (3d Cir. 1976). Courts have found that "the language of the LMRA makes plain [that] public employees are not covered by the statute" and dismissed cases brought against their union. Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (citing 29 U.S.C. § 152(2)). The facts established above indicate that OCRRA, Plaintiff's employer, is a "public benefit corporation" created by the laws of the State of New York. OCRRA acts "in all respects for the benefit of the people of the county and the state of New York for the improvement of their health, welfare and prosperity" thus "performing an essential governmental function in the exercise of the powers conferred by this title." N.Y. Pub. Auth. Law § 2045-c(7). OCRRA is therefore a political subdivision of the state of New York, and the Court lacks jurisdiction to hear any LMRA claims. The motion will be granted in this respect.

**B.  Equal Pay Act**

Defendants also contend that Plaintiff's claims brought pursuant to the Equal Pay Act, 29 U.S.C. § 206, et seq., should be dismissed.  Plaintiff does not oppose this portion of the motion.  The Court will therefore dismiss the Plaintiff's claim under the Equal Pay Act as unopposed.

**C.  Claims Against the Individual Defendants under Title VII**

Defendants next seek to dismiss the Plaintiff's claims against the individual Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., contending that the statute does not permit individual liability.  Plaintiff does not address that issue, but instead simply contends that the individual Defendants participated in creating the allegedly "illegal" Side Letter.  The Court will grant the Defendants' motion in this respect, as "'individuals are not subject to liability under Title VII.'" Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (quoting Wrighten v. Glowski, 232 F.3d 119, 120 (2d. Cir. 2000)).

**D.  Federal Anti-Discrimination Law**

Defendants next assert that Plaintiff cannot prevail on his claims brought pursuant to Title VII and 42 U.S.C. §§ 1981 and 1983.   Defendants offer a general argument and arguments related to each statute, which the Court will address in turn.

**i.  Discrimination under Title VII**

Defendants first point out that Plaintiff's claims are premised upon alleged discrimination by OCRRA in providing training for the plant operator position to a white male employee instead of him.  Plaintiff contends that OCRRA's decision was motivated by discrimination, and that the Union ratified this discriminatory intent by

agreeing to the Side Letter.

### a. Discrimination in the Training Letter and Grievances

Plaintiff essentially alleges that OCRRA discriminated against him and that the Union participated in this decision by agreeing to the Side Letter and then failing to file grievances to challenge the training offered to another worker who was not black. A member of a union bringing a discrimination claim against his union must show, "at a minimum, that the union breached its duty of fair representation and that its actions were motivated by discriminatory animus." McIntyre v. Longwood Cent. School Dist., 380 Fed. Appx. 44, 49 (2d Cir. 2010).

The Court will grant the motion in this respect because Plaintiff has no evidence to support a claim that the Union breached its duty of fair representation. A union breaches its duty of fair representation when that "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190; see also, Air Line Pilots Ass'n, Intern. v. O'Neill, 499 U.S. 65, 67 (1991) (standard applies to "all union activity, including contract negotiation."). Still, "something more then negligence or the exercise of poor judgment on the part of the union must be shown in order to support a finding of arbitrary conduct." Local 337, International Bhd. of Teamsters, 307 N.L.R.B. 437, 438 (1992). While a "gross mistake or inaction which has no rational explanation may constitute a breach of the duty of fair representation," no claim can lie when "the union clearly had a rational basis for making its decision not to press on with [a worker's] grievance." Poole v. Budd Co., 706 F.2d 181, 184 (6th Cir. 1983). The "union's conduct must also be within '[a] wide range of reasonableness'" and not "irrational." Air Line Pilots Ass'n, 499 U.S. at 76 (quoting Ford Motor Co. v.

17

Huffman, 345 U.S. 330, 338 (1953)). "'This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.'" White v. White Rose Food, a Div. of DiGiorgio Corp., 237 F.3d 174, 179 (2d Cir. 2001) (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45-46 (1998)).

Here, the alleged breach of duty of fair representation came when the union negotiated an allegedly improper "Side Letter" and failed to file grievances that the Plaintiff requested the union file regarding his access to training. Plaintiff has not produced any evidence other than unsubstantiated claims that the agreement between the Union and OCRRA was somehow illegal, and such unsupported allegations cannot survive summary judgment. Plaintiff therefore cannot demonstrate a breach of the duty of fair representation by pointing to the Side Letter that the Union and OCRRA negotiated.

That agreement also played a central role in the grievances about which the Plaintiff sought to file. As explained above, that agreement permitted OCRRA to make the choice to train an employee for plant operator positions within certain parameters, taking into consideration experience, skills and aptitude for the job. Each time OCRRA offered plant operator training to a person besides the Plaintiff, Plaintiff sought to file a grievance. The union filed an initial grievance, but soon recognized–partly on the advice of counsel–that a grievance could not possibly succeed. The person selected for training, Boardway, had both the requisite seniority and skills for training in the position, and the agreement permitted OCRRA to make that choice. The Court finds that the Defendants' handling of the Plaintiff's grievances, based on a reading of the

18

contract and agreements between the parties that permitted the employer to choose the employee to receive additional training within a broad parameter, was not unreasonable, much less irrational, given the circumstances. Plaintiff could not prevail on any claim asserting a breach of duty of fair representation, and Plaintiff could not prove the first element of a discrimination claim against the Union.

Even if the Plaintiff could show that the Defendants somehow engaged in an unfair labor practice, Plaintiff has not pointed to any evidence by which a jury could conclude that Defendants were motivated by a discriminatory animus. Instead, Plaintiff again points to the allegedly illegal "Side Letter" and argues that the Defendants' negotiation and use of the terms of that letter are evidence of discrimination. Plaintiff offers no explanation, however, for why the letter represents evidence that Defendants were motivated by any particular discriminatory animus. The mere fact that Plaintiff considers the letter improper does not constitute any evidence that Defendants were motivated by discriminatory animus in negotiating the agreement and failing to pursue and/or file grievances. As such, Defendants' motion must be granted with respect to Plaintiff's claims of discrimination.

### b. Failure to Promote

The parties disagree about whether Plaintiff has enough evidence to support his claim that Defendants are liable under a failure-to-promote theory. To prevail on a discriminatory failure-to-promote claim, a Plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] 'applied and was qualified for a job for which the employer was seeking applicants'; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's

qualifications." Patrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) (quoting

Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998)).  A plaintiff may not

establish the second element of the *prima facie* case "merely with evidence that a

plaintiff generally requested promotion consideration." Id.  "A specific application is

required to 'ensure that, at the very least, the plaintiff employee alleges a particular

adverse employment action, an instance of alleged discrimination, by the employer.'" Id.

Still, "narrow" circumstances may permit a plaintiff to avoid that requirement: "an

employee must demonstrate that (1) the vacancy at issue was not posted; and (2) the

employee either had (a) no knowledge of the vacancy before it was filled or (b)

attempted to apply for it through informal procedures endorsed by the employer." Id.

Defendants contend that Plaintiff cannot make out a *prima facie* case because he

admits that he did not apply for any position and in any case was not qualified for

another position.

    The Court agrees with the Defendants that Plaintiff has not produced evidence to

support his *prima facie* case on the failure-to-promote claim.  Plaintiff has produced no

evidence that he actually applied for any position.  In support of his claim that he

applied for a position, Plaintiff simply references a "Ross Affidavit."  He does not point

to any particular statements in that affidavit.  Plaintiff's own evidence submitted in

support of his position does not contain any Ross Affidavit.  The exhibits to Defendants'

motion, however, contain the affidavit of Defendant Richard A. Ross, President of Local

158.  See dkt. # 29-8.  Ross's affidavit discusses Plaintiff's requests to file a grievance

over Boardway's "selection" for a "temporary appointment" as plant operator.  See Id. at

¶¶ 3-7.  Nowhere does Ross allege that Plaintiff had applied for any position.  Instead,

he simply states that Plaintiff contended that he should have been selected for the position on the basis of his skills, and sought to file a grievance after OCRRA chose Boardway. Ross's affidavit is not evidence that Plaintiff applied for any position; instead, the affidavit demonstrates that Plaintiff sought to grieve the fact that he was not selected for a temporary position after Boardway was. No evidence indicates that Plaintiff actually went through any formal or informal procedure to apply for the temporary opening–Plaintiff simply contends that he was entitled to such a position because of his status.

Plaintiff's position could be read to be that, because he contends that he was the person most suited for the job, the union contract required that the temporary position be offered to him. He contends that failing to offer him the position establishes that element of the *prima facie* case. That argument is foreclosed by the Second Circuit's finding in <u>Brown v. Coach Stores, Inc.</u>. There, the Plaintiff argued that she had established she had applied for a promotion by asking for one during her annual evaluations, but did not point to any specific instance when she actually applied for a position. <u>Brown</u>, 163 F.3d at 709-710. The Court found that these allegations failed to state claim because "if generally requesting a promotion in an annual review were sufficient to establish a prima facie case, employers would be unfairly burdened in their promotion efforts. Rather than simply considering individuals who have specifically applied for a promotion, an employer would additionally have to keep track of all employees who have generally expressed an interest in promotion and consider each of them for any opening for which they were qualified but did not specifically apply." <u>Id.</u> at 710. Here, as in <u>Brown</u>, Plaintiff provides no evidence that he actually requested a

temporary appointment on any occasion before OCRRA filled that position. Instead,

Plaintiff contends that OCRRA erred in selecting Boardway for a position for which he

was better qualified and to which he was entitled. As OCRRA cannot be liable for

failing to choose someone who did not seek the temporary position, the Plaintiff cannot

make out a prima facie case under the circumstances.[4]

---

[4]Defendants also argue that the doctrine of collateral estoppel prevents Plaintiff from litigating his failure to promote claim. Defendants contend that Magistrate Judge David E. Peebles's ruling that Plaintiff could not prevail on a failure-to-promote claim in Plaintiff's action against OCRRA precludes Plaintiff from bringing such a claim against the Defendants here. The doctrine of collateral estoppel, "or issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit.'" Flaherty v. Lang, 199 F.3d 607, 613 (2d Cir. 1999) (quoting Schiro v. Farley, 510 U.S. 222, 232 (1994)). "Generally, for collateral estoppel to apply, four prerequisites must be satisfied: (1) the issues in both proceedings must be identical; (2) the issue must have been actually litigated and actually decided in the prior proceeding; (3) there must have been a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits." U.S. v. U.S. Currency in Amount of $119,984.00, More or Less, 304 F.3d 165, 172 (2d Cir. 2002). A party who was not a litigant in the previous action may use collateral estoppel as a defense, "so long as the person against whom the findings are asserted or his privy had a full and fair opportunity to litigate the identical issue in the prior action." Carino v. Town of Deerfield, 750 F.Supp. 1156, 1170 (N.D.N.Y. 1990) (citing Blonder-Tongue Lab., Inc. v. University of Illinois Found., 402 U.S. 313, 329 (1971)). Here, the Defendants argue that Magistrate Judge Peebles decided the identical issue in a case against OCRRA, that Plaintiff had a full and fair opportunity to litigate the issue in that forum, and that Plaintiff is therefore precluded from arguing the issue here. Magistrate Judge Peebles issued a bench decision in the earlier matter, finding explicitly that Plaintiff, "in terms of disparate treatment, . . . failed to demonstrate the existence of any position for which he was denied." See Jones v. OCRRA, No. 13cv1425, dkt. # 51 at 41. That is precisely the issue before the Court, and Plaintiff certainly had an opportunity to brief and argue the issue fully before Magistrate Judge Peebles issued his decision. Plaintiff has appealed that decision, but Courts in this Circuit have concluded that the mere fact that an issue is on appeal does not preclude a court from finding that a party had a "full and fair opportunity" to litigate the issue. See, e.g., Connecticut General Life Ins. Co. of New York v. Cole, 821 F.Supp. 193, 201 (S.D.N.Y. 1993) (existence of an appeal is only "one of the factors to be considered" in collateral estoppel analysis). The Court finds that, given the identity of the issues, the purposes of collateral estoppel would be

### c.    Retaliation

Defendants also seek judgment on Plaintiff's retaliation claims brought pursuant to Title VII.  Defendants contend that Plaintiff cannot establish a Title VII retaliation claim on several grounds: (1) he has not established any retaliatory acts; (2) he did not suffer any materially adverse changes in the conditions of his employment; and (3) he has not established "but for" causation.  Plaintiff responds that he engaged in a protective activity by filing charges against the Defendants with the New York State Division of Human Rights and by filing an improper practice charge with the New York State Public Employment Relations Board.  He alleges that he suffered adverse employment actions when Defendants failed to process his grievances, and that a causal connection existed between his protected activity and the establishment of the Side Letter dated September 28, 2012.

"'To establish a prima facie case of retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.'" Gregory v. Daly, 243 F.3d 687, 700 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).  To establish the third element, Plaintiff must point to a "materially adverse action," which courts have defined as a requirement that plaintiff "'show that a reasonable employee would have found the action one that might

_____

served by preventing Plaintiff from relitigating the issue previously decided by Magistrate Judge Peebles here.  Collateral estoppel applies here, as argued by the Defendants.

23

well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 25 (2d Cir. 2012) (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). "To establish causation, a plaintiff must show that the protected speech 'was a substantial motivating factor in the adverse employment action[.]'" Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 148, 167 (2d Cir. 2006) (quoting Morris v. Lindau, 196 F.3d 102, 196 (2d Cir. 1999)). "A plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse employment action." Id. at 168.

Here, Defendants contend that no evidence exists to support the third and fourth elements of Plaintiff's prima facie case. The Court agrees. Plaintiff has failed to demonstrate any evidence of a materially adverse employment action. He contends that the Defendants' "failure to process his grievance" constitutes an adverse action, as well as Defendants' alleged "breech" of the CBA by negotiating the supposedly illegal "Side Letter." All of this, he asserts, caused him to lose wages and benefits, and led to his "suffering humiliation, embarrassment and mental anguish in the workplace." Failing to file requested grievances and renegotiating the terms of a contract could hardly have dissuaded a reasonable person from filing a discrimination claim in the future. Not filing or pursuing the grievances did not change Plaintiff's employment position at OCRRA and did not cause Plaintiff to suffer any discipline. Moreover, Plaintiff has offered no evidence other than unfounded speculation to indicate that Defendants' failure to file and process grievances was related to Plaintiff's action in filing administrative complaints alleging discrimination in 2013 and 2014. Indeed, the

administrative complaints largely concerned Defendants' failure to file and process the grievances. The administrative law judge who dismissed Plaintiff's claims in March 2015, considered Plaintiff's continuing complaint that the Defendants failed to pursue his grievances adequately. A reasonable juror could not conclude that the alleged retaliation was caused by Plaintiff's filing of administrative complaints when the administrative complaints addressed the allegedly retaliatory conduct.[5] <u>See</u> Exh. I to affidavit of Robert S. Hite, Esq., dkt. # 29-2. The Court will therefore grant the motion in this respect as well.[6]

### ii.    Section 1981 and 1983 Claims

Defendants also seek judgment on Plaintiff's claim brought pursuant to 42 U.S.C. § 1981 and § 1983. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the

---

[5]Plaintiff could not allege that the complaint of harassment that Defendant Jeremy Millson filed with OCRRA on May 8, 2014 was motivated by a desire to retaliate against Plaintiff. As explained above, Plaintiff has offered no evidence to dispute Defendants' claim to the contrary, and the Court has accepted the fact of Millson's motivation as true.

[6]At the end of their brief, Defendants argue that Plaintiff's Title VII claims are barred because Plaintiff failed to exhaust his administrative remedies before filing his claims. As the Court concludes that all of the Title VII claims lack merit, the Court will decline to address this issue.

discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." <u>Mian v. Donaldson, Lufkin & Jenerette Sec. Corp.</u>, 8 F.3d 1085, 1087 (2d Cir. 1993).  Section 1983 provides that "[e]very person who, under color of" law of "any State . . . subjects, or causes to be subjected, any City of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," is liable to the person whose rights were violated.  42 U.S.C. § 1983.  "To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law." <u>Cox v. Warwick Valley Cent. Sch. Dist.</u>, 654 F.3d 267, 272 (2d Cir. 2011).

Courts use the same legal framework to decide Title VII and Section 1981 and 1983 discrimination claims. <u>Ruiz v. County of Rockland</u>, 609 F.3d 486, 491 (2d Cir. 2010); <u>Littlejon v. City of New York</u>, 795 F.3d 297, 312 (2d Cir. 2015) (a "disparate treatment claim under Title VII, § 1981 and § 1983 is subject to the burden-shifting evidentiary framework set for in <u>McDonell Douglas [v. Green</u>, 411 U.S. 792 (1973)]"). Plaintiff offers the same argument in opposition to judgment on his Section 1983 and Section 1981 claims as he did for his Title VII claims: that he was denied a promotion by the operation of an "illegal side letter," and that the position went to a white man instead.  Since the Court has found that the Plaintiff has failed to make out a claim under Title VII, the Court must also find that no evidence supports Plaintiff's claims under these two statutes, and Defendants' motion will be granted in this respect as

well.[7]

**E.    New York Executive Law**

Defendants next seek judgment on Plaintiff's claims brought pursuant to New

York Executive Law § 297(9).  They argue that those claims bear the same basis as

Plaitniff's Title VII claims and are judged by the same standards.  Since Plaintiff's Title

VII claims must be dismissed, Defendants argue that the Plaintiff's claims under New

York law are equally unavailing.  Plaintiff does not address this argument.  He instead

points out that he filed a complaint with the New York Division of Human Rights ("DHR")

that charged Defendants with unlawful discriminatory practices.  The DHR, Plaintiff

claims, found it had jurisdiction over the claims and that probable cause existed, and

granted Plaintiff leave to dismiss the action and pursue his claims in Court.

Defendants are correct that "[c]laims under Title VII and the [Human Rights Law]

are analyzed under the same standards."  Pfeiffer v. Lewis County, 308 F.Supp.2d 88,

102 (N.D.N.Y. 2004) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1312-1313 (2d Cir.

1995).  Since the Court has found that summary judgment is appropriate for

Defendants on Plaintiff's Title VII claims, the Court will likewise grant the motion with

respect to Plaintiff's claims brought pursuant to New York Executive Law § 297(9).

**F.    Taylor Law**

Defendants contend that Plaintiff's claims brought pursuant to New York's Taylor

Law, NY Civ. S. L. § 200, et seq., should likewise be dismissed.  Defendants claim all

---

[7]Moreover, the Court has found that Plaintiff has insufficient evidence for a jury to
conclude that Defendants violated Plaintiff's rights, and therefore Plaintiff could not
prove a Section 1983 claim whether under McDonnell-Douglass or not.  See Cox, 654
F.3d at 272.

27

Plaintiff's claims are time-barred in this respect. Defendants also contend that Plaintiff is estopped from claiming that Defendants breached their duty of fair representation by failing to file and process grievances in 2013 because a New York administrative law judge dismissed those claims. Defendants also assert no evidence supports Plaintiff's claim that the Defendants engaged in unfair bargaining by refusing to file a grievance about OCRRA's refusal to provide Plaintiff with plant operator pay on May 14, 2014.

New York law provides that "[a]ny action or proceeding against an employee organization . . . which complains that such employee organization has breached its duty of fair representation regarding someone to whom such employee organization has a duty shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later." NY CPLR § 217(2)(a). In cases where a union member alleges a breach of the duty of fair representation because the union refused to participate in a grievance process, a plaintiff's claim "[accrues] at the time [the union member] 'knew or should have known' of the union's refusal to assist him." Bitterman v. Herricks Teachers' Ass'n, 220 A.D.2d 473, 474, 632 N.Y.S. 173, 174 (2d Dept. 1995). Here, Plaintiff filed his claim on August 14, 2014. As such, any Taylor-law claims that accrued before May 14, 2014 are timed-barred. Such accrual would occur when Plaintiff found out that the union refused to file or process a grievance. As related above, the only action by the Defendants regarding a grievance that occurred after May 14, 2014 concerned Plaintiff's complaint that he was improperly denied the plant operator rate for work performed in May 2014. Complaints regarding other grievances (as well as the

28

negotiation of the allegedly illegal "Side Letter") all occurred well before May 2013 and are time barred.[8]

Thus, only Plaintiff's complaints about Defendants' refusal to file a grievance regarding OCRRA's refusal to award him plant-operator pay in May 2014 can be considered by the Court on the merits.  New York law provides that a union representing a public employee like the Plaintiff can be liable for a "breach [of] its duty of fair representation[.]" N.Y. Civ. S. § 209-a(2)(c).  Under New York law, "[i]n order to establish a claim for a breach of the duty of fair representation against a union, there must be a showing that the activity, or lack thereof, which formed the basis of the charges against the union was deliberately invidious, arbitrary or founded in bad faith." Civil Serv. Emples. Ass'n v. Pub. Empl. Rels. Bd., 132 A.D.2d 430, 432, 522 N.Y.S.2d 709, 710-11 (3d Dept. 1987).  Such rules apply when a union declines to file a

_____

[8]Defendants claim that Plaintiff is precluded from bringing claims regarding the failure to file grievances in 2013.  Defendants point out that he filed improper practice charges with the PERB regarding those actions and those charges were dismissed after a hearing by an administrative law judge.  Citing to federal law, Defendants argue that the Court is required to give the administrative law judge's findings preclusive effect.  See University of Tennessee v. Elliot, 478 U.S. 788, 799 (1986) (finding that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.") (quoting United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966)).  Whatever the merits of this position, the Defendants have not presented evidence that the decision of the state administrative law judge has been fully litigated.  While Defendants point to the decision of that judge, Plaintiff points to evidence that he appealed that decision to the PERB.  The Board's Rules permit a party to file "exceptions" to the Board regarding a judge's ruling.  4 NYCRR § 213.2(a).  The Board is permitted to "adopt, modify, or reverse" the decision appealed.  4 NYCRR § 213.6(a).  No evidence had been placed in the record by either party as to the results of Plaintiff's exceptions, and no evidence exists to prove that the decision of the state ALJ therefore has preclusive effect in this matter.

grievance, as here. <u>Gordon v. Board of Educ.</u>, 167 A.D. 2d 509, 562 N.Y. 2d 180 (2d Dept. 1990) (dismissing claim against union because there was no evidence to find that the union's failure to file a grievance "was deliberately invidious, arbitrary and founded in bad faith."). Here, as with the grievances discussed above, the Defendants, after investigating Plaintiff's claim that he was entitled to extra pay in May 2013 because he was entitled to work as a temporary plant operator, reasonably determined that he was not entitled to such pay and declined ot file a grievance. Since nothing in the contract required OCRRA to provide Plaintiff with additional pay, the Court finds that Defendants conduct in refusing to file the grievance was not deliberately invidious, arbitrary or founded in bad faith.[9] The motion will be granted with respect to Plaintiff's Taylor Law claims as well.

## IV.  CONCLUSION

For the reasons stated above, the Court will GRANT the Defendant's motion for summary judgment, dkt. #29.


IT IS SO ORDERED.

Dated:December 11, 2015

Thomas J. McAvoy
Senior, U.S. District Judge

---

[9]Even if the Court were to consider the time-barred claims, the Court would find no breach of the duty of fair representation under New York law for the same reasons that the Court found no violation of the LMRA. Defendants' conduct in negotiating the Side Letter and refusing to file and/or pursue grievances was reasonable and did not represent bad faith in any way.